*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WANDA SMITH,

        Plaintiff-Appellant,

and

SHELBY GLAZER, PC,

        Intervening Plaintiff,

v

PROGRESSIVE MARATHON INSURANCE
COMPANY,

        Defendant-Appellee.

UNPUBLISHED
June 29, 2023

No. 360908
Wayne Circuit Court
LC No. 20-000381-NF

Before: HOOD, P.J., and CAMERON and GARRETT, JJ.

PER CURIAM.

Plaintiff, Wanda Smith (Smith), appeals as of right the order granting summary disposition in favor of defendant, Progressive Marathon Insurance Company (Progressive), in this no-fault action to recover personal protection insurance (PIP) benefits. We reverse and remand.

## I. BACKGROUND

This case arises out of a claim for PIP benefits stemming from injuries Smith suffered in a November 2017 automobile accident. Smith's son, Shalonda Treadway, owned a Buick LeSabre that he insured under his business entity, SC Treadway Management, through Progressive. In early November 2017, Smith left Treadway's Detroit residence in the Buick and drove westbound on the Davison Freeway near the Linwood Street intersection. Smith, seeing no oncoming vehicles, attempted to make a left turn, and an oncoming vehicle struck Smith and the Buick. Smith went to the hospital for treatment of injuries to her head, neck, and back and, as a result of the accident, received extensive medical care for her injuries. She sought PIP benefits from

-1-

Progressive to cover her medical care and in-home replacement services. According to Smith's complaint, Progressive failed or refused to pay her PIP benefits.

Smith did not have automobile insurance at the time of the accident, and Treadway's insurance policy did not list Smith as a driver of the Buick. The policy listed the Farmington Hills, Michigan, apartment of Treadway's girlfriend as the garaging address, despite Treadway stating that he resided at his home in Detroit and regularly garaged the Buick there. Treadway later changed the garaging address to his business office in Brighton, Michigan. He admitted, however, that he never garaged the Buick in Brighton.

Smith sued Progressive,[1] alleging that Progressive breached its contract and violated the Michigan no-fault statute, MCL 500.3101 *et seq.*, when it denied her PIP benefits under Treadway's insurance policy for the Buick. Progressive moved for summary disposition under MCR 2.116(C)(10). It argued that, in his application for insurance coverage, Treadway fraudulently misrepresented the garaging address for the Buick, entitling Progressive to seek rescission of the policy and dismissal of Smith's claims. Progressive argued that Treadway's misrepresentations were material, because according to Progressive Process Consultant, David Hale, had Treadway listed his residence in Detroit as the garaging address, Treadway's premium would have increased 128%, from $2,736 to $6,247. Progressive also argued that even if Smith was an innocent third party, rescission was proper because the balance of equities favored Progressive.

The trial court granted Progressive's motion for summary disposition without a hearing, finding that "Treadway failed to disclose" where he garaged the Buick, resulting in a "material misrepresentation." Referencing the "equitable analysis" described in *Bazzi v Sentinel Ins Co*, 502 Mich 390, 400-411; 919 NW2d 20 (2018), the trial court found that "it would be inequitable to deny Progressive the right to rescind its policy and deny coverage to [plaintiff] on this basis." In arriving at this conclusion, the court relied on Smith's familial relationship with Treadway and her "regular use" of the Buick. This appeal followed.

## II. STANDARDS OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion under

---

[1] Smith initially attempted to commence this action on February 4, 2019, however, that action was dismissed by stipulation and without prejudice in February 2020. In its order granting summary disposition (the order appealed from), the trial court addressed the one-year-back rule, stating in relevant part:

> [T]he Court shall proceed as if Progressive agreed to the stipulation alleged by Plaintiff. And if the parties agreed to such a provision, then the Court finds that the one-year-back rule would be applied from the date the prior suit was filed. This result is further supported by the fact that the prior suit was not dismissed until after the second suit was filed. Thus, Smith's claim against Progressive has been pending continuously since the filing of the prior suit.

MCR 2.116(C)(10) "tests the factual sufficiency of a claim." *Id*. at 160 (citation and emphasis omitted). In considering a motion under MCR 2.116(C)(10), the trial court "must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. (citation omitted). Such a motion "may only be granted when there is no genuine issue of material fact." *Id*. (citation omitted). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted).

The equitable remedy of rescission is "granted only in the sound discretion of the court." *Pioneer State Mut Ins Co v Wright*, 331 Mich App 396, 405; 952 NW2d 586 (2020) (*Wright*) (quotation marks and citations omitted). "An abuse of discretion occurs when the decision falls outside the range of reasonable and principled outcomes." *Id*. (citation omitted). "An abuse of discretion necessarily occurs when the trial court makes an error of law." *Id*. (citation omitted).

## III. LAW AND ANALYSIS

Smith argues that the trial court erred in granting summary disposition because Progressive failed to establish that equity favored rescission of the insurance policy, with regard to her status as an innocent third party. Because the trial court did not address the factors relevant to rescission, we agree.

Rescission is an equitable remedy. *Bazzi*, 502 Mich at 409. It allows a court to "abrogate[] a contract and restore[] the parties to the relative positions that they would have occupied if the contract had never been made." *Id*. (citation omitted). Traditionally, the innocent third party rule barred an insurer "from rescinding an insurance policy because of a material misrepresentation made in an application for no-fault insurance where there is a claim involving an innocent third party." *Webb v Progressive Marathon Ins Co*, 335 Mich App 503, 511-512; 967 NW2d 841 (2021), quoting *Sisk-Rathburn v Farm Bureau Gen Ins Co*, 279 Mich App 425, 430; 760 NW2d 878 (2008) (quotation marks omitted). In *Bazzi*, our Supreme Court held that its decision in *Titan Ins Co v Hyten*, 491 Mich 547; 817 NW2d 562 (2012), abrogated the innocent third party rule, thereby allowing an insurer to seek rescission of an automobile insurance policy in cases of fraud. *Bazzi*, 502 Mich at 406-407.

Although the "innocent-third-party rule no longer bars insurers from seeking rescission, insurers are not categorically entitled to rescission." *Wright*, 331 Mich App at 409-410 (quotation marks and citation omitted). Rather, rescission "is granted only in the sound discretion of the court." *Bazzi*, 502 Mich at 409 (quotation marks and citations omitted). When an insurer seeks rescission, "the trial court must balance the equities to determine whether the plaintiff is entitled to the relief he or she seeks." *Id*. at 410 (quotation marks and citations omitted).

On appeal, Smith does not challenge the trial court's finding that Treadway made a material, fraudulent misrepresentation in procuring the insurance policy. We note, however, that Progressive presented evidence establishing that Treadway made a false, material

misrepresentation regarding where he garaged the Buick.[2] Treadway admitted that he primarily resided in and garaged the Buick at his home in Detroit, but failed to list this address on his insurance policy. Treadway initially listed a Farmington Hills address as the garaging address for the Buick, then, in August 2017, switched it to the address of his business in Brighton, Michigan. At the time of the accident, Treadway's insurance policy listed Brighton as the garaging location, even though Treadway admitted that he never garaged the Buick in Brighton. Progressive relied on this misrepresentation and was injured by it, as explained by Hale, because had Treadway accurately reported the garaging location of the Buick, Treadway's premium would have increased 128% from $2,736 to $6,247.

Smith argues that, despite Treadway's misrepresentation and Progressive's entitlement to rescind the policy, she should remain eligible for payment of benefits as an innocent third party. In *Farm Bureau Gen Ins Co of Mich v ACE American Ins Co*, 503 Mich 903, 906-907; 919 NW2d 294 (2018) (MARKMAN, C.J., concurring), Justice Markman's concurrence detailed a nonexclusive list of factors for courts to consider when balancing the equities in deciding whether to grant rescission. This Court in *Wright*, 331 Mich App at 396, adopted Justice Markman's five identified factors for consideration in these circumstances:

> (1) the extent to which the insurer could have uncovered the subject matter of the fraud before the innocent third party was injured; (2) the relationship between the fraudulent insured and the innocent third party to determine if the third party had some knowledge of the fraud; (3) the nature of the innocent third party's conduct, whether reckless or negligent, in the injury-causing event; (4) the availability of an alternate avenue for recovery if the insurance policy is not enforced; and (5) a determination of whether policy enforcement only serves to relieve the fraudulent insured of what would otherwise be the fraudulent insured's personal liability to the innocent third party. [*Wright*, 331 Mich App at 411 (citation omitted).]

We examine each factor in turn to address Smith's claim of error.

## A. FACTOR ONE: UNCOVERING THE FRAUD

The first *Wright* factor examines the extent to which the insurer could have uncovered the subject matter of the fraud before the innocent third party was injured. *Wright*, 311 Mich App at 411. Insurers have no duty to investigate or verify the representations of an insured. See *Titan Ins Co*, 491 Mich at 557. And when "[t]here is no evidence to suggest that there could or could not have been a more diligent effort" to discover any misrepresentations, this factor will favor neither

---

[2] To establish a claim for fraudulent misrepresentation, an insurer must show that (1) the insured "made a material misrepresentation," (2) "that it was false," (3) that when the insured made the statement, they "knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion," (4) that they "made it with the intention that it should be acted upon by" the insurer, (5) that the insurer "acted in reliance upon it," and (6) that by acting in reliance on the material misrepresentation, the insurer "suffered injury." *Titan*, 491 Mich at 555-556 (citation omitted).

party. See *Wright*, 331 Mich App at 412. Nothing in the record suggests Progressive could have uncovered the subject matter of the fraud at issue before Smith's accident, nor did Progressive have a duty to investigate whether Treadway's representations to obtain the insurance policy were true. This factor favors neither party.

## B.  FACTOR TWO: RELATIONSHIP BETWEEN FRAUDULENT INSURED AND THE INNOCENT THIRD PARTY

The second factor examines the relationship between the fraudulent insured and the innocent third party to determine whether the third party knew of the fraud. *Wright*, 331 Mich App at 411. Here, the trial court identified facts relating to whether Smith was an innocent party, including the familial relationship between Treadway and Smith, Smith's involvement in the purchase of the vehicle, and Smith's admission at her deposition that she drove the vehicle on a regular basis, "whenever [she] needed to go somewhere." But the trial court did not make findings regarding how those facts weigh for or against rescission.

Progressive argues that the familial relationship between Treadway and Smith, Treadway's intent to put Smith on the insurance policy (despite forgetting to do so), and the fact that Smith served as secretary for Treadway's business—the named insured on the policy—was evidence that Smith knew of the fraud. But the record also indicates that although Smith was aware that the Buick was insured, and she accompanied Treadway to purchase the Buick years earlier, she did not pay for the Buick, and did not remember signing any documents related to the purchase of, or insurance for, the Buick. She also was not involved with the procurement of the insurance policy. It is unclear whether she was aware of where Treadway listed the garaging location for the Buick. And she did not live with Treadway. Accordingly, there is conflicting evidence regarding whether Smith knew of Treadway's fraud. "[A] court may not make findings of fact; *if the evidence before it is conflicting*, summary disposition is improper." *Piccione v Gillette*, 327 Mich App 16, 19; 932 NW2d 197 (2019) (quotation marks and citation omitted; emphasis in original). Because there is conflicting evidence on the record regarding Smith's knowledge of the fraud, there is a factual dispute on that issue. By failing to analyze whether this factor favored rescission before granting rescission and summary disposition, the trial court erred.

## C.  FACTOR THREE: NATURE OF INNOCENT THIRD PARTY'S CONDUCT

The third factor examines the nature of the innocent third party's conduct to see whether the innocent third party was reckless or negligent in the injury-causing event. *Wright*, 331 Mich App at 411. "In general, a factual dispute exists when there is conflicting evidence concerning *what* happened, *when* something happened, *where* something happened, *how* something happened, *who* was involved, or some other similar factual inquiry." *Attorney General v PowerPick Players' Club of Mich, LLC*, 287 Mich App 13, 27; 783 NW2d 515 (2010) (emphasis in original). Progressive argued that there was evidence supporting the conclusion that Smith caused the accident by negligently failing to yield.[3] Smith testified, however, that traffic was clear when she

---

[3] To the extent Progressive's evidence on this issue was the traffic crash report, we note that such reports are generally inadmissible hearsay and cannot be considered on a motion for summary

turned. The trial court did not make a finding on this factor, nor acknowledge the conflicting evidence. And as noted earlier, if the parties present conflicting evidence on a material issue, summary disposition is improper. *Piccione*, 327 Mich App at 19. We, therefore, find that the trial court erred by failing to adequately consider this factor.

## D. FACTOR FOUR: ALTERNATE AVENUE FOR RECOVERY

The fourth factor examines the availability of an alternate avenue for recovery if the insurance policy is not enforced. *Wright*, 331 Mich App at 411. Smith argues that if the policy is rescinded, the notice provisions of MCL 500.3145 and MCL 500.3174 would bar her from recovering the majority, if not all, of the PIP benefits she seeks from the November 2017 accident. She also argues that Progressive's delay seeking rescission precludes her from recovering PIP benefits from any other source. MCL 500.3174 states, in relevant part:

> A person claiming through the assigned claims plan shall notify the Michigan automobile insurance placement facility of his or her claim *within 1 year after the date of the accident*. On an initial determination of a claimant's eligibility for benefits through the assigned claims plan, the Michigan automobile insurance placement facility shall promptly assign the claim in accordance with the plan and notify the claimant of the identity and address of the insurer to which the claim is assigned. An action by a claimant must be commenced as provided in [MCL 500.3145]. [MCL 500.3174 (emphasis added).]

Further, the one-year-back rule, under MCL 500.3145(1), states:

> An action for recovery of personal protection insurance benefits payable under this chapter for an accidental bodily injury *may not be commenced later than 1 year after the date of the accident that caused the injury* unless written notice of injury as provided in subsection (4) has been given to the insurer within 1 year after the accident or unless the insurer has previously made a payment of personal protection insurance benefits for the injury. [MCL 500.3145(1) (emphasis added).]

The accident at issue occurred in November 2017. Smith commenced this action in January 2020. There is no evidence Smith sought PIP benefits through the Michigan Assigned Claims Program (MACP) or other insurers. As Progressive rightly points out, even if it had immediately sought rescission, Smith would have been past the one-year deadline to recover through the MACP, even considering that she initially attempted to commence this action on February 4, 2019. Smith, therefore, failed to comply with the deadlines in MCL 500.3145 and MCL 500.3174. Although the trial court did not make an explicit finding on this factor, accepting Progressive's characterization, the evidence supports finding this factor weighs in favor of Progressive.

---

disposition. See *Moncrief v Detroit*, 398 Mich 181, 188-192; 247 NW2d 783 (1976). See also *Solomon v Shuell*, 435 Mich 104, 139; 457 NW2d 669 (1990). On remand, the trial court should take this into consideration when evaluating the third *Wright* factor.

## E.  FACTOR FIVE: POLICY ENFORCEMENT

The fifth factor examines whether policy enforcement only serves to relieve the fraudulent insured of what would otherwise be the fraudulent insured's personal liability to the innocent third party.  *Wright*, 331 Mich App at 411.  Both parties concede that this factor does not apply, and we agree.  We, therefore, conclude that this factor favors neither party.

## F.  BALANCE OF THE EQUITIES

The fourth factor favors Progressive.  The first and fifth factor of the equity-balancing test favors neither party.  Genuine issues of material fact exist with respect to the second and third factors.  Those factual disputes must be resolved by the trial court.  See *Zurcher v Herveat*, 238 Mich App 267, 297; 605 NW2d 329 (1999) (indicating that absent the consent of the parties, equitable remedies are decided by the trial court without a jury).  Because there is a factual dispute regarding factors two and three of the equity-balancing test, Smith may still be entitled to equitable relief as an innocent third party.  The trial court, therefore, erred in granting summary disposition to Progressive.

## IV.  CONCLUSION

We reverse and remand for further proceedings.  We do not retain jurisdiction.

/s/ Noah P. Hood
/s/ Thomas C. Cameron
/s/ Kristina Robinson Garrett